IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
BOSTON, MASSACHUSETTS

| | |
|---|---|
| PALOMA RAQUEL FERNANDES<br>and<br>TEOFILO JOSE FERNANDES FILHO<br>*Plaintiffs*<br><br>v.<br><br>**U.S. Citizenship & Immigration Services**<br><br>ANGELICA ALFONSO-ROYALS<br>**in her capacity as Acting Director,<br>U. S. Citizenship & Immigration Services**<br><br>DENIS RIORDAN<br>**In his capacity as District Director,<br>U. S. Citizenship & Immigration Services, New England**<br><br>JERRY AMMONS<br>**In his capacity as Field Office Director,<br>U. S. Citizenship & Immigration Services, Boston**<br><br>KRISTI NOEM<br>**In her capacity as Secretary,<br>Department of Homeland Security**<br><br>PAM BONDI<br>**In her capacity as Attorney General<br>U.S. Department of Justice**<br>*Defendants* | **COMPLAINT FOR JUDICIAL REVIEW, DECLARATORY, AND INJUNCTIVE RELIEF**<br><br><br><br>Civ. No. 1:25 - cv - 11595 |

1

## COMPLAINT FOR JUDICIAL REVIEW OF AN AGENCY DECISION AND DECLARATORY AND INJUNCTIVE RELIEF

The Plaintiffs, Paloma Raquel FERNANDES and Teofilo Jose FERNANDES FILHO (herein after, Plaintiffs or Ms. FERNANDES and Mr. FERNANDES FILHO), through undersigned counsel, complain of the Defendants, U.S. Citizenship & Immigration Services, Angelica Alfonso-Royals, Acting Director, U.S. Citizenship & Immigration Services; Denis Riordan, District Director, U.S. Citizenship & Immigration Services, New England; Jerry Ammons, Field Office Director, U.S. Citizenship & Immigration Services, Boston; Kristi Noem, Secretary, U.S. Department of Homeland Security; and Pam Bondi, Attorney General, U.S. Department of Justice, as follows:

### INTRODUCTION

1.  This action is brought to protect the constitutional and statutory rights of the Plaintiffs, which have been abridged by the Defendants' actions in denying an I-130 Alien Relative petition, filed by United States citizen Plaintiff, Ms. Paloma FERNANDES on behalf of her biological father and co-Plaintiff, Mr. Teofilo FERNANDES FILHO, as the parent of a United States citizen.  Said petition was purportedly denied on the basis that Section 204(c) of the Immigration and Nationality Act ('INA'), 8 U.S.C. §1154(c) prohibits the approval of a visa petition filed on behalf of an alien who had a an immediate relative visa status previously denied for engaging in marriage fraud and that Plaintiff, Mr. FERNANDES FILHO is subject to this statutory bar.

2

2. The principle of family unity and the right to live together is among the most
   fundamentally important interests protected by the Due Process Clause. See, e.g., Moore
   v. City of East Cleveland, 431 U.S. 494, 499 (1977) (plurality opinion); Griswold v.
   Connecticut, 381 U.S. 479, 485-86 (1965). In Moore, the court noted that the
   Constitution "protects the sanctity of the family precisely because the institution of the
   family is deeply rooted in this Nation's history and tradition", Moore, 431 U.S. at 503,
   and is "a foundation of civilization" Griswold, 381 U.S. at 496 (Goldberg J., concurring).
   Likewise, the history of U.S. immigration law underscores the vital importance of family
   unity and the preservation of the family unit. H. Rep. No. 82-1365, at 29 (1952); see also
   H. R. Rep. No. 101-723(I), at 40 (1990) (describing family reunification as a "cornerstone
   of U.S. immigration policy"); see also generally John Guendelsberger, The Right to
   Family Reunification in French and United States Immigration Law, 21 Cornell Int'l L.J.
   1, 7-25 (1988) (explaining the basis and history of U.S. immigration).

3. The United States government **may not arbitrarily restrict or deny the right of family
   unity; any interference** with this fundamental liberty interest **requires evidence that a
   valid basis for the restriction applies.** Griswold, 381 U.S. at 479, 485-86.

4. To date, Defendants fail to articulate a valid basis to restrict Plaintiff FERNANDES right
   to family unity—the right of a US citizen child to not be separated from her father.
   Defendants also fail to adduce adequate evidence to support any basis for their
   interference in the Plaintiffs' right to family unity. By denying Ms. FERNANDES visa

petition, Defendants have violated due process, as well as statutory and regulatory safeguards protecting this vital interest.

5. This civil action is brought pursuant to the Administrative Procedure Act ('APA'), 5 U.S.C. §701 et seq., the federal question statute, 28 U.S.C. §1331, the INA, 8 U.S.C. §1101 et seq., and the Constitution of the United States, seeking review of a decision by Defendant U.S. Citizenship & Immigration Services ('USCIS') denying a Form I-130, Petition for Alien Relative ('I-130 Petition') filed by U.S. citizen Plaintiff, Ms. FERNANDES on behalf of her non-citizen father and Plaintiff, Mr. FERNANDES FILHO on January 9, 2023.

6. On January 9, 2023, Defendant USCIS denied Ms. FERNANDES I-130 Petition for Alien Relative on behalf of Mr. FERNANDES FILHO pursuant to INA §204(c), 8 U.S.C. §1154(c) as USCIS concluded he was an alien who had previously sought immediate relative status as the spouse of a United States citizen by reason of a marriage entered into for the purpose of evading immigration laws.

7. The I-130 petition, if approved, would have conferred "immediate relative" status, pursuant to INA §201(b)(2)(A)(i), 8 U.S.C. §1151(b)(2)(A)(i), to Mr. FERNANDES FILHO. An approval then permits a noncitizen to apply for lawful permanent residence and, eventually, U.S. citizenship.

8. Defendant USCIS' denial of Ms. FERNANDES I-130 Petition on behalf of her father is arbitrary and capricious, not in accordance with law, in excess of statutory jurisdiction and authority, and issued without due observance of required procedure. Section 706(2)

of the APA confers a right of judicial review and authorizes this court to compel agency action unlawfully withheld and hold unlawful and set aside agency actions, findings and conclusions in such circumstances. 5 U.S.C. §706(2).

9. USCIS's decision is also in violation of the Plaintiffs' liberty interests protected by the Due Process Clause of the Fifth Amendment of the U.S. Constitution. See, e.g., Landon v. Plascencia, 459 U.S. 21, 34-35 (1982) (holding that the right to live with and not be separated from one's immediate family is "a right that ranks high among the interests of the individual" and that cannot be taken away without procedural due process).

10. Defendants' actions have caused – and will continue to cause – irreparable harm to Plaintiffs. Defendants' denial of the I-130 Petition prevents Mr. FERNANDES FILHO from obtaining lawful permanent resident status in the United States, where he now makes his home. Defendants' unreasonable action prevents the Plaintiffs from enjoying the support, security and comfort that family unity provides. Mr. FERNANDES FILHO faces removal from the United States as a consequence of denial of the relief, as he is no longer authorized to remain in the United States lawfully. Consequently, the Plaintiffs additionally seek declaratory and injunctive relief as detailed in this complaint.

11. On January 9, 2020, Plaintiffs filed a complaint similar to the present complaint for denial of Ms. FERNANDES I-130 visa petition filed in 2015. On September 16, 2020 upon consent of the parties and without prejudice, parties reached an agreement to allow Ms. FERNANDES to re-file USCIS Form I-130 to petition for her father, Mr. FERNANDES FILHO. The same day, a Stipulation of Dismissal was filed Pursuant to

Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. It was the understanding and expectation of Plaintiffs that Defendants would allow Ms. FERNANDES to re-file USCIS Form I-130 petition for her father, Mr. FERNANDES FILHO. However, despite the agreement, Defendants denied the re-filed I-130 petition on January 9, 2023 and the Board of Immigration Appeals denied Plaintiffs' subsequent appeal on January 22, 2025.

## JURISDICTION

13. The Plaintiffs seek judicial review under 5 USC §701 et seq., the Administrative Procedure Act and 28 U.S.C. §1331 (federal subject matter jurisdiction), as well as 8 U.S.C. §1101 et seq., the Immigration and Nationality Act, and the Constitution of the United States. Original jurisdiction is vested in this Court by 8 U.S.C. §1329 (jurisdiction of the district courts), 28 U.S.C. §1346(a)(2) (civil actions against the United States), and 28 U.S.C. §2201 (declaratory relief), to redress the deprivation of rights, privileges, and immunities secured to the Plaintiffs.

### A. Subject Matter Jurisdiction

14. As the Supreme Court has made clear, a federal district court has jurisdiction over an original suit to set aside an agency determination made in excess of the agency's delegated powers. Leedom v. Kyne, 358 U.S. 184, 190-91 (1958). The Court explained that where an action does not seek review of a decision made within the agency's authority, but instead challenges a decision as having been made in excess of the agency's delegated powers, the courts retain jurisdiction over such a suit. Id., at 189-90 ("This

Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers.").

15. Three well-established canons of statutory construction also support the Court's assertion of subject matter jurisdiction. See Kucana v. Holder, 558 U.S. 233, 251 (2010) (noting that "executive determinations generally are subject to judicial review."). First, congressional intent to limit a court's jurisdiction must be "clear and convincing" in order to preclude judicial review. Reno v. Catholic Social Services, Inc., 509 U.S. 43, 63-64 (1993); Bd. of Governors of the Fed. Reserve Sys. v. MCorp. Fin., Inc., 502 U.S. 32, 44 (1991). Second, there is a "strong presumption" in favor of judicial review of administrative acts. INS v. St. Cyr, 533 U.S. 289, 298 (2001); Kucana, 558 U.S. at 241. Third, as a general rule, courts resolve ambiguities in immigration laws in favor of the alien. INS v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987). These principles support the Court's assertion of subject matter jurisdiction to review the Plaintiffs' claims.

16. Furthermore, statute provides specific redress; under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702. "Agency action" includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13).

17. Agency action subject to judicial review includes the denial of a USCIS Form I-130, Petition for Alien Relative filed pursuant to INA 204(a)(1)(A)(i); 8 U.S.C. §1154(a)(1)(A)(i), as denial of the Petition constitutes a "final agency action for which there is no

other adequate remedy in a court...." 5 U.S.C. §704.  The standards to be applied on

review are governed by 5 USC §706.  Heckler v. Chaney, 470 U.S. 821, 828 (1985).

18. The APA does not independently provide a basis for subject matter jurisdiction.  Califano

v. Sanders, 430 U.S. 99, 107 (1977).  However, the federal question statute, codified at 28

U.S.C. §1331, gives federal courts jurisdiction over a suit that arises under a right of

action created by the APA.  See Bowen v. Massachusetts, 487 U.S. 879, 891 n.16 (1988)

("[I]t is common ground that if review is proper under the APA, the District Court ha[s]

jurisdiction under 28 U.S.C. §1331.").

19. Federal Courts review administrative actions under the APA to determine whether the

agency acted arbitrarily, capriciously, abused its discretion, or acted otherwise not in

accordance with law.  FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009)

(citing 5 U.S.C. §706(2)(A)).  The requirement that agency action not be arbitrary and

capricious **requires the agency to "examine the relevant data and articulate a**

**satisfactory explanation for its action."**  Motor Vehicle Mfrs. Ass'n of United States,

Inc. v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43 (1983).  Moreover, the

agency must take appropriate steps to explain its actions in a manner that "will enable the

court to evaluate the agency's rationale" at the time of its decision.  Pension Benefit Guar.

Corp. v. LTV Corp., 496 U.S. 633, 654 (1990).

20. INA §242; 8 U.S.C. §1252, does not deprive this Court of jurisdiction.  INA §242(a)(2)

(B), 8 U.S.C. §1252(a)(2)(B) provides that no court shall have jurisdiction to review

either (i) "any judgement regarding the granting of" various forms of relief from

inadmissibility or removal, or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified… to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]"

21. As the present action is not an action to review a removal order or a determination of inadmissibility, but an action challenging a decision by USCIS to deny an I-130 petition, which denial was arbitrary, capricious, an abuse of discretion, contrary to law, and in excess of statutory authority, this Court retains original jurisdiction under the APA and 28 U.S.C. § 1331, as well as for declaratory relief under 28 U.S.C. § 2201. See INA §204, 8 U.S.C. §1154; 8 CFR §§204.1, 204.2(a); see also Kucana, 558 U.S. at 244-251; Atieh v. Riordan, 09-10977-RWZ, fn. 1 (D. Mass., 2012) (hereinafter "Atieh I") (summarizing circuit case law concluding that INA §242(a)(2)(B)(ii), 8 U.S.C. §1252(a)(2)(B)(ii) does not preclude review of I-130 petitions denied due to findings of prior fraudulent marriage).

22. Additionally, neither INA §242(a)(2)(B)(ii), 8 U.S.C. §1252(a)(2)(B)(ii), nor APA §7061(a) deprives this Court of jurisdiction over the present action, because the Plaintiffs do not seek review of a discretionary decision by USCIS. Rather, Plaintiffs challenge the agency's decision denying approval of an I-130 immediate relative petition which is a non-discretionary application. Therefore, this Court retains jurisdiction to review USCIS's denial of such a petition.

23. Unlike discretionary applications for immigration benefits such as adjustment of status under INA §245, 8 U.S.C. §1255, cancellation of removal under INA §240A, 8 U.S.C. §1229a, or a waiver of inadmissibility under INA §212(h), 8 U.S.C. §1182(h) – all of

which are sought by noncitizens – a petition for immediate relative status is non-discretionary, sought and filed by a U.S. citizen petitioner, who has a right and protected liberty interest in said petition. <u>Ching v. Moyorkas</u>, 725 F.3d 1149, 1156 (9th Cir. 2013). As the 9th Circuit indicated:

> "Immediate relative status for an alien… **is a right** to which citizen applicants are entitled as long as the petitioner and … beneficiary meet the statutory and regulatory requirements for eligibility.  This **protected interest** is entitled to the protections of due process."  <u>Id.</u>

This is so, notwithstanding the disqualifying language of INA §204(c), 8 U.S.C. §1154(c).  In <u>Ching v. Mayorkas</u>, the Ninth Circuit rejected the government's argument that when an exception to eligibility exists, the U.S. citizen petitioner's right to obtain immediate relative classification for an alien relative via an I-130 petition no longer exists, and the process is no longer non discretionary.  725 F.3d at 1156.

The court explained: "This argument confuses the question of whether there is a protected interest in a benefit with the question of eligibility for that benefit.  Virtually no government benefit is available to individuals without a requirement that certain conditions are met."  The Supreme Court explained, "the welfare recipients in <u>Goldberg v. Kelly</u>, [397 U.S. 254 (1970)] had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them.  The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility.  <u>But we held that they had a right to a hearing at which they might attempt to do so.</u>"  <u>Id.</u> (emphasis added).

10

24. The issues over which the Plaintiffs seek judicial review are predicate legal questions over which this Court retains jurisdiction. As the First Circuit has noted, "[b]oth the Supreme Court and this court have consistently rejected arguments that Congress has eliminated judicial review of the legal question of interpretation of the statute as to whether an alien is eligible for consideration of relief." Succar v. Ashcroft, 394 F.3d 8 (1st Cir., 2005). As the Plaintiffs do not seek review of the agency's exercise of discretion but rather of legal and constitutional claims that challenge the agency's application of the provisions of INA §204(c), 8 U.S.C. §1154(c) and relevant regulation to the Plaintiffs' circumstances, jurisdiction in this court endures.

25. With limited probative evidence on the record, the Court is not limited to the decision of the Board of Immigration Appeals ('BIA') and has the authority to review both the decisions of USCIS and the BIA *de novo* and review findings of fact, "subject to appropriate principles of administrative deference." Larios v. Holder, 608 F.3d 105, 107 (1st Cir.2010); Ivanov v. Holder, 736 F.3d 5,11 (1st Cir. 2013).

26. Courts may give deference to BIA findings if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole. " Larios, 608 F.3d at 107 (quoting I.N.S. v. Elias–Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). However, this deference is not without bounds—"we must reject the BIA's ...findings if 'we cannot conscientiously find that the evidence supporting them is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [their] view [s]." ' Ivanov, 736 F.3d at 11 (quoting

<u>Kartasheva v. Holder</u>, 582 F.3d 96, 105 (1st Cir.2009)) (internal brackets omitted); see

also <u>Mukamusoni v. Ashcroft</u>, 390 F.3d 110, 119 (1st Cir.2004).

### B. Standing

27. The Plaintiffs have standing to complain because the have suffered an injury in fact—

denial of the I-130 Petition filed by Ms. FERNANDES on behalf of her father, Mr.

FERNANDES FILHO– which is traceable to the challenged conduct of the Defendants

and can likely be redressed by a favorable decision. See <u>Lujan v. Defenders of Wildlife</u>,

504 U.S. 555, 560-61 (1992) (holding that standing requires a plaintiff to show (1) injury

in fact, (2) a causal connection between the injury and the complained-of conduct, and (3)

a likelihood that the injury will be redressed by a favorable decision). USCIS's denial of

the Plaintiffs' I-130 Petition prevents Mr. FERNANDES FILHO from obtaining lawful

status and residing in family unity with his daughter, a U.S. citizen. Furthermore, denial

places Mr. FERNANDES FILHO at risk of removal from the United States, where he has

long made his home. Thus, the Plaintiffs have "alleged such a personal stake in the

outcome of the controversy as to warrant [their invocation] of federal court jurisdiction

and to justify exercise of the court's remedial powers on [their] behalf." <u>Warth v. Seldin</u>,

422 U.S. 490, 489-99 (1975).

28. A favorable decision by this Court will grant Plaintiffs the principal relief they seek,

namely, reversal of USCIS's erroneous decision and a remand to the agency for re-

adjudication and approval of the I-130 petition; approval will ultimately place Mr.

FERNANDES FILHO in position to obtain adjustment of status, precluding removal from the United States.

### C. Finality and Ripeness

29. USCIS's denial of Plaintiff's I-130 Petition constitutes "final agency action" for purposes of APA review. See 5 U.S.C. §704.  USCIS denied Ms. FERNANDES I-130 Petition on January 9, 2023.  Within the denial letter, USCIS, as required by its own agency guidance, instructed the Plaintiffs that their only redress was to file an appeal with the Board of Immigration Appeals ("BIA").  Per regulation, an appeal to the BIA is the only redress from the agency's decision.  8 C.F.R. §§204.2(a)(1)(ii), 1204.1.  On November 11, 2023 Plaintiffs filed a appeal and, on January 22, 2025, the BIA issued a decision affirming the USCIS's decision and dismissing their appeal.  The denial of the Plaintiffs' petition is therefore a final agency decision, and the Plaintiffs have exhausted their administrative remedies.

30. Likewise, USCIS's decision denying the Plaintiffs' I-130 Petition is ripe for review. Determining the ripeness of administrative action for judicial review requires evaluation of (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.  Nat'l Park Hospitality Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003).  The Plaintiffs dispute presents legal questions and constitutional claims which are fit for judicial review and there remains a "concrete dispute" between the parties. Id. at 812.  Furthermore, without judicial review, the Plaintiffs will continue to suffer significant hardship in that they will be unable to resolve Mr. FERNANDES

FILHO's legal status in the United States, causing him to face removal, and possibly deny

his daughter, Ms. FERNANDES, the opportunity to reside with her family.

31. The Plaintiffs have "no other adequate remedy in a court" to challenge USCIS's erroneous

denial of the I-130 Petition that Ms. FERNANDES filed on behalf of her father, MR.

FERNANDES FILHO.  5 U.S.C. §704. There is no other adequate remedy in court that

would prohibit APA review because the INA does not provide for federal court review of

the denial of visa petitions.  See INA §§ 101-507, 8 U.S.C. §§ 1151-1537.  The option

available to Ms. FERNANDES to file a new I-130 Petition would not relieve the hardship

caused if this Court withholds consideration of the Plaintiffs' claims that the agency's

decision continue to be erroneous and should be reversed.  See, e.g., Sharkey v.

Quarantillo, 541 F.3d 75, 90 (2d Cir. 2008).

## VENUE

32. Venue is proper under 28 U.S.C. §1391(e)(3) because this is an action against officers and

agencies of the United States in their official capacities, brought in the district where the

Defendants reside.

## PARTIES

33. The Plaintiffs, Ms. FERNANDES and Mr. FERNANDES FILHO are daughter and

father, residing in Weymouth, Massachusetts.  Ms. FERNANDES is a United States

citizen, born M███████ in Cape Verde and naturalized on April 16, 2010.  Mr.

FERNANDES FILHO is a citizen of Cape Verde born M█████5 in Cape Verde.

34. The Defendants, Angelica Alfonso-Royals, Acting Director, U.S. Citizenship & Immigration Services; Denis Riordan, District Director, U.S. Citizenship & Immigration Services, New England; Jerry Ammons, Field Office Director, U.S. Citizenship & Immigration Services, Boston; Kristi Noem, Secretary, U.S. Department of Homeland Security; and Pam Bondi, Attorney General, U.S. Department of Justice are charged by law with the statutory and regulatory obligation to determine eligibility for I-130 Petitions for immediate relatives pursuant to INA §204, 8 U.S.C. §1154 and 8 C.F.R. §§204.1, 204.2(a).

## FACTUAL ALLEGATIONS & LEGAL BACKGROUND

35. On September 30, 2020, Plaintiff Paloma FERNANDES filed USCIS Form I-130, Alien Relative Petitioner to Defendant USCIS' direct mailing dropbox in Chicago, Illinois to classify her father, Plaintiff Teofilo FERNANDES FILHO, as an immediate relative so that he might seek adjustment of status to lawful permanent residence.[1]  Exh. A.

36. As evidence of eligibility for the I-130 Petition, Plaintiffs submitted a copy of Ms. FERNANDES naturalization certificate of April 16, 2010, demonstrating U.S. citizenship and a copy of Ms. FERNANDES birth certificate, with certified translation, establishing the parental relationship.  Appropriate filing fees were paid.  Id.

37. On October 8, 2020, Defendant, USCIS acknowledged receipt of the I-130 Petition. Exh. B.

---

[1] Form I-485, Application to Register Permanent Residence or Adjust Status was filed contemporaneously with the Form I-130, Alien Relative Petition by Plaintiff, Teofilo FERNANDES FILHO.  Plaintiffs do not seek review of the denial of this separate application.

38. Defendant USCIS did not issue a Notice of Intent to Deny Plaintiff's I-130 petition.

39. On January 9, 2023, USCIS formally denied Ms. FERNANDES I-130 Petition for Alien Relative stating "Nothing submitted with your petition overcomes the derogatory information that formed the basis of the USCIS and BIA findings in connection with MSC1591525162. Accordingly, you have hailed to overcome the USCIS and BIA determinations that the beneficiary entered a sham marriage to evade immigration laws. INA 204(c). For this reason, USCIS finds that you have not met your burden of proof in demonstrating that your petition should be approved. Therefore, USCIS denies your Form I-130." Exh. C

40. On November 11, 2023 Plaintiffs filed a appeal with the Board of Immigration Appeals. Exh. D.

41. On January 22, 2025, the BIA issued a decision affirming the USCIS's denial and dismissing their appeal. The BIA did not articulate an explanation for the denial other than to reference its prior November 30, 2017 denial that concluded there was "substantial and probative evidence of marriage fraud between the beneficiary and former spouse, who had filed an unsuccessful Form I-130 on his behalf." It also noted that "no new evidence related to the beneficiary's prior marriage" had been filed but did not examine or evaluate relevant evidence of marriage fraud. Exh. E; Exh K.

***Prior Efforts to Resolve Dispute Before This Court: Plaintiffs' 2015 I-130 Petition***

42. On August 14, 2015, Plaintiff Ms. FERNANDES filed an initial Form I-130 Alien Relative Petition seeking immediate relative status for her father Mr. FERNANDES FILHO along with USCIS with supporting evidence. Exh. F.

16

43. On July 14, 2016, an interview was scheduled in connection with Plaintiffs' pending I-130 petition and Plaintiff, Mr. FERNANDES FILHO's pending application for adjustment of status. Plaintiff, Ms. FERNANDES was not present due to an out-of-state commitment. The interviewing officer permitted the interview to proceed.

44. On August 2, 2016, USCIS issued a Notice of Intent to Deny ('2016 NOID') indicating the Service's intent to deny Plaintiff Ms. FERNANDES I-130 petition. Exh. G.

45. The reason for the intended denial provided within the 2016 NOID was that USCIS' records indicated a previous Form I-130 had been filed by Plaintiff Mr. FERNANDES FILHO's second wife, Debra Ann Olivero on "January 15, 1995" (*sic.*) and USCIS had determined that Mr. FERNANDES FILHO's marriage to Ms. Olivero was "for the sole purpose of obtaining immigration benefits." Exh. G, at. 1.

46. The 2016 NOID noted that Mr. FERNANDES FILHO and Ms. Olivero were married on January 8, 1998 in Brockton, Massachusetts and subsequently filed an I-130 Petition and an Application for Adjustment of Status. The couple were interviewed in connection with both the I-130 Petition and the Application for Adjustment of Status on July 21, 1998. Exh. G, at 2.

47. Plaintiff, Mr. FERNANDES FILHO attended the July 21, 1988 interview with his then-spouse, Ms. Olivero. Also present for the interview were his minor children.

48. The 2016 NOID summarizes the findings of the interview of July 21, 1998 thus: "During their interview Ms. Olivero and the beneficiary claimed they were living in marital union but neither gave persuasive evidence of a *bona fide* marital relationship. Their answers to several questions about their marriage were vague. Of particular concern were their lack

of familiarity with each other's immediate families and the little evidence they provided of marital bona fides." Exh. G, at 2.

49. Neither contemporaneous notes of the interview nor a record of actual statements were provided as a basis for the 2016 NOID's conclusions. Plaintiff, Mr. FERNANDES FILHO's recollections of the interview differ from the characterization provided by the USCIS adjudicating officer. *Infra*.

50. The 2016 NOID indicates that, on October 28, 1999 – almost two years after the marriage and the filing of applications <u>and</u> three months after the interview – investigators sought the couple at the joint address provided on the application and at the interview and determined that they were not then living at this apartment (123 Elms Street, Apt. C5, Quincy, Massachusetts). Exh. G, at 2.

51. The 2016 NOID indicates further that the investigators 'located the beneficiary at 71 Shaw Street, Braintree, MA." The 2016 NOID states that Mr. FERNANDES FILHO informed the investigators that he and Ms. Olivero "lived at the Braintree address with his two children" but that "an inspection of the premises and other sources indicated that Ms. Olivero did not live with the beneficiary at the address and never had." <u>Id.</u>

52. No clarification is provided within the 2016 NOID as to why or how "an inspection of the premises and other sources" demonstrated that Ms. Olivero was not then living at the apartment and never had. Plaintiff, Mr. FERNANDES FILHO and a contemporaneous witness directly conflict with the 2016 NOID conclusions as they do not recall any inspection of the premises or providing any documentary evidence or "other sources" to the investigating officers. *Infra*.

53. The 2016 NOID indicates that the investigating officers further questioned Mr.
FERNANDES FILHO and that he indicated that Ms. Olivero "was working" but that he
could not confirm where she worked or what her telephone number was. Mr.
FERNANDES FILHO apparently later stated that Ms. Olivero was not working because
she had "fallen at work a few months prior and had injured herself". Apparently, Mr.
FERNANDES FILHO also could not readily provide the investigators with the names of
Ms. Olivero's three children. Id.

54. The 2016 NOID indicates that "a review of the lease for 71 Shaw Street, Braintree,
Massachusetts" showed the tenants as the beneficiary, Mr. FERNANDES FILHO, a
Bernadette Santos, and two children. Ms. Santos is identified as the first wife of Mr.
FERNANDES FILHO and mother of Plaintiff, Ms. FERNANDES. Exh. G at 2. A copy
of the purported, referenced lease is not provided with the NOID for inspection. A lease
had not been submitted by Mr. FERNANDES FILHO to USCIS or provided to the
investigating officers.

55. The 2016 NOID indicates that Records from the Registry of Motor Vehicles at the time
showed Ms. Olivero's address as 526 3rd Street, Apt. 9, Fall River, Massachusetts and Fall
River Housing Department records showed that Ms. Olivero had been living at that
address since October 1997. These records apparently contradict biographic information
provided by Mr. FERNANDES FILHO and Ms. Olivero's in her filings and Ms.
Olivero's testimony at interview July 21, 1998. Id.

56. The 2016 NOID indicates that a previous Notice of Intent to Deny was issued to Ms.
Olivero on October 23, 2000 ('2000 NOID').  When no response was received, her
Petition was denied on February 23, 2001. Id.

57. Plaintiffs provided a timely response to the 2016 NOID issued in relation to their I-130
petition.  The response included an affidavit of Plaintiff, Mr. FERNANDES FILHO.
Additionally, the response included affidavits from five other parties with knowledge of
the *bona fides* of the marital relationship between Mr. FERNANDES FILHO and Ms.
Olivero: Linda Andrade Oliviera, cousin of Mr. FERNANDES FILHO who introduced
him to his former wife, Ms. Olivero; Maria Fatima Wright, a childhood friend of Mr.
FERNANDES FILHO who sublet the couple their first apartment; Carlos Fernandes,
nephew of Mr. FERNANDES FILHO (son of Ms. Maria Fatima Wright and Mr.
FERNANDES FILHO's brother), who had resided with Mr. FERNANDES FILHO and
his wife, Ms. Olivero; Adude Indira Baptista, niece of Mr. FERNANDES FILHO, who
regularly babysat for him and his wife, resided with him at the time investigating officers
came to his apartment, and witnessed their purported inspection and interview; and Tara
Ann Smith, daughter of Ms. Olivero.  Finally, the response included a lease for the
property at Windjammer Cove, 71 Shaw Street, Braintree, Massachusetts showing that
Mr. FERNANDES FILHO and Ms. Olivero lived at the property at the relevant time, not
Ms. Bernadette Santos and two children, as purported by USCIS in the NOID. Exh. H.

58. On December 16, 2016, USCIS issued a decision denying Plaintiffs I-130 petition ('2016
DENIAL'). Exh. I. The decision states that a thorough review was made of the petition,
the testimony provided during their interview and the record of evidence. Exh. I, at 1. The

decision also acknowledges receipt of Plaintiffs' response to their 2016 NOID, listing the

documents provided. Exh. I, at 2.  It then goes on to repeat verbatim the reasons given as

basis for the issuance of the 2016 NOID regarding the interview of July 21, 1998 and the

subsequent investigation and questioning of Mr. FERNANDES FILHO. Exh. I, at 3.

59. Within the 2016 DENIAL USCIS concluded that, upon review of the 'affidavits and

documents' submitted in response to the NOID, the Plaintiffs have not met their "burden

of presenting evidence to show that the beneficiary's prior marriage was not entered into

for the primary purpose of evading immigration law." Exh. I.

60. In regards to the affidavit evidence submitted in 2016, USCIS summarized the affidavits

as a whole as noted that the beneficiary and his wife had a genuine marital relationship,

lived together as husband and wife, but that their relationship deteriorated in light of the

beneficiary's wife's drug use, ultimately leading to separation and divorce.  Id.

61. USCIS found fault with the 2016 affidavits provided, stating that "there are few dates

offered that can be used to objectively compare and corroborate when these events

occurred" and that those dates that are offered "appear to contradict with the record of

proceedings."  USCIS does not note or credit that the affidavits were prepared

approximately two decades after the events they describe and were dependent upon the

recollections of the affiants about events spanning a period of some years.  Id.

62. As an example of the apparent contradictions found by USCIS, the Denial notes that Ms.

Olivero's daughter, Tara Ann Smith, provides detail regarding Ms. Olivero's prior living

arrangements expressly questioned in the NOID and in the decision.  Ms. Smith states

that "[i]n 1999 I lived in Fall River in a 12-unit building on the second floor.  My mother

21

and two brothers John and Mario lived in the same building on the third floor." She goes

on to state that Ms. Olivero met and married Mr. FERNANDES FILHO and moved to

Quincy but kept her apartment in Fall River because she had subsidized housing and did

not want to lose the benefit because of her children. USCIS draws attention to the fact

that Mr. FERNANDES FILHO was married in 1998 and lived in Quincy during that year,

rather than 1999. USCIS makes no further reference to the affidavit in its finding and

apparently dismisses its weight in its entirety due to this small discrepancy. Exh. I at 3-4.

63. At other points, the affidavit of Ms. Smith confirms that she met Plaintiff, Mr.

FERNANDES FILHO prior to the marriage at the home of Ms. Olivero and that Plaintiff,

Mr. FERNANDES FILHO and Ms. Olivero met frequently prior to their marriage,

although their courtship was short (less than a year). Ms. Smith also confirms that her

mother moved to Quincy after marriage, and that their relationship lasted a total of 'a

couple of years' and appeared to be a genuine romantic relationship. She also confirms

that her mother's drug use resulted in her abandoning Plaintiff, Mr. FERNANDES

FILHO and her children and that she remains estranged from her children to this day, due

to her lifestyle choices. Exh. H at 20-21.

64. Of particular interest is Ms. Smith's description of Plaintiff, Mr. FERNANDES FILHO's

approach to Ms. Olivero's drug usage and addiction. She notes that, when Plaintiff, Mr.

FERNANDES FILHO "eventually learned that [Ms. Olivero] was addicted to crack

cocaine" he "never talked about her drug addiction" to the children and that he still never

talks of this issue with anyone. This insight shows a familiarity, concern, and intimacy

with the Plaintiff, Mr. FERNANDES FILHO and is entirely consisted with his statements
to USCIS.  Exh. H.

65. As a second example of contradictions, USCIS refers to the affidavits of Maria Fatima
Wright and Carlos Fernandes (son of Plaintiff, Mr. FERNANDES FILHO's brother and
Ms. Wright) who confirmed that Mr. FERNANDES FILHO and Ms. Olivero resided at
the Quincy address for 'a little over a year'.  The affidavits indicate that Ms. Wright and
Carlos Fernandes, her son, had resided in the apartment prior to Mr. FERNANDES
FILHO and Ms. Olivero moving in.  That, after Ms. WRIGHT moved out of state, Mr.
FERNANDES FILHO and Ms. OLIVERO moved in, shortly after their marriage, and
Mr. FERNANDES remained in the apartment, residing with the couple.  Exh. H at 9-15.

66. USCIS concluded, within the 2016 DENIAL, that the statement that Mr. FERNANDES
FILHO and Ms. Olivero resided together at the Quincy address for "a little over a year" is
directly contradicted by "the lease submitted with the NOID" for 71 Shaw Street,
Braintree, MA which was executed in September 1998. On this basis, USCIS concludes
that Mr. FERNANDES FILHO and Ms. Olivero could only have lived at the Quincy
address for at most nine months.  Exh. I, at 2- 3.

67. USCIS fails to acknowledge the other facts stated in the affidavit, which bear on its
veracity.  Ms. WRIGHT stated that she has known the Plaintiff for approximately fifty
years, met Ms. Olivero on several occasions prior to the marriage and was present at the
wedding.  She further describes how she was in daily contact with the Plaintiff, Mr.
FERNANDES FILHO and his spouse while they lived with her son and discussed their
marriage with close friends and family when the couple began to have marital difficulties.

She also confirms that Plaintiff's stepchildren – two adults and a minor – had continued

to reside in Fall River, Massachusetts after the Plaintiff, Mr. FERNANDES FILHO and

his spouse had moved in together and that, after his spouse "disappeared," the Plaintiff

was in contact with the children, and assuring their well-being in their mother's absence.

Exh. H at 9-11.

68. Likewise, the 2016 DECISION does not acknowledge other facts outlined in the affidavit

of Mr. Carlos Fernandes bearing on its veracity and corroborating the statements in the

affidavit of Ms. Wright. Mr. Fernandes confirms that Ms. Olivero visited Ms. Wright in

Dorchester, Massachusetts and was introduced to her and Mr. Carlos Fernandes. Mr.

Carlos Fernandes also confirms the apparent strength and caring nature of the Mr.

FERNANDES FILHO's relationship with his former wife. Mr. Carlos Fernandes

confirms his residence with the couple at their first apartment and the sublet arrangement

described by his mother. He also describes the couple's decision to move when Mr.

FERNANDES FILHO's children moved to live with him and his wife and his own

decision to move with another cousin to a nearby apartment, where his relationship with

the couple continued. Mr. Carlos Fernandes also confirms that Ms. Olivero kept her

apartment in Fall River for the benefit of her children and often claimed to be there when

she was not, as uncovered by Mr. FERNANDES FILHO in his conversations with her

children, particularly her eldest son, John. Exh. H at 9-15; Exh. I.

69. USCIS also references the affidavit of Mr. FERNADES FILHO, submitted in response to

the NOID. In this affidavit, Mr. FERNANDES FILHO explains that he was not truthful

to the investigating officers about his wife's whereabouts because he was concealing her

drug usage, which had led her to abandon him.  USCIS expressly deemed meritless Mr.

FERNANDES FILHO's explanation, conflated it with his expression of concern that her

minor children would learn of her drug usage, and simply fully dismissed it.  USCIS

stated that, as the children were not present for the interview, did not live with Mr.

FERNANDES FILHO, and because Mr. FERNANDES FILHO could not readily

remember their names, that his expression of concern, and therefore, his desire not to

reveal his wife's drug usage to law enforcement officers was disingenuous and that the

more likely explanation is that Ms. Olivero had never lived at the address and Mr.

FERNANDES FILHO sought to hide this. Exh H at 23-25; Exh. I at 4.

70. USCIS makes no specific reference to the affidavits of Linda Adrade Oliviera or Adude

Indira Baptista beyond the initial short summary of their content, as claims that the

beneficiary and wife had a genuine marital relationship, lived together as husband and

wife, and that their relationship deteriorated due to the wife's drug use.  Exh. I at 3.

71. Linda Andrade Oliveira is Mr. FERNANDES FILHO's cousin.  Her affidavit is

particularly relevant, as she describes how she introduced the couple, was present for

many of their initial meetings, hosted their wedding, and participated in their wedding as

maid of honor.  Ms. Oliveira describes in detail her interaction with Mr. FERNANDES

FILHO and Ms. Olivero's children throughout the breakdown of the marriage due to Ms.

Olivero's drug usage. Exh. H at 5-7.

72. Affiant Adude Indira Baptista is a legal permanent president and the niece of Mr.

FERNANDES FILHO.  Her affidavit is likewise particularly relevant, as she often

babysat for the couple while they resided at their second apartment and was staying in the

apartment (as she was a victim of domestic violence) when the marriage broke down.
Ms. Baptista describes in detail how the marriage deteriorated. Exh. H at 17-18.

73. Notably, Ms. Baptista was also present when investigating officers came to the apartment.
In her affidavit, Ms. Baptista describes how the investigating officers passed through the
apartment, interviewing Mr. FERNANDES FILHO in the kitchen for approximately
twenty minutes. She attests that Officers did not inspect the apartment. Exh. H at 17-18.

74. The affidavits provided are consistent in almost every respect, with each other and with
the previously provided affidavits. Despite this, USCIS focused solely on the apparent
discrepancy that the affidavits (two decades later) state that the couple resided together at
their first apartment for approximately a year, when the record indicates the period of
residence was more probably approximately 9 months. USCIS concludes that this
contradiction is of particular importance, as "these two affidavits internally conflict with
the "only piece of corroborating documentary evidence submitted" (e.g., the lease),
despite the other consistencies. Exh. I at 4.

75. USCIS indicates that it ascribes 'some evidentiary value' to the affidavits provided, but
concludes, despite this, that Petitioner and Beneficiary had not met their burden. Exh. I
at 4.

76. Plaintiff appealed the USCIS Director's 2016 DENIAL on February 14, 2017 with the
Board of Immigration Appeals. Exh. J.

77. On November 30, 2017 the Board of Immigration Appeals dismissed Plaintiff's appeal.
Exh. K.

78. The BIA, noting that the information submitted by Plaintiffs was insufficient to overcome the derogatory information on the record, relied on the same information discussed (supra) in the 2016 NOID and 2016 DENIAL. Mainly, they relied on the July 21, 1998 marital interview and the October 28, 1999 home visit in Quincy. Exh. K at 2.

79. Further, instead of noting the actual words of Plaintiff Mr. FERNANES FILHO's affidavit, which explains why he was not truthful during the home visit, the BIA instead states that the discrepancy was probative of marriage fraud. Exh. K at 2.

80. Also, the BIA does not address the Braintree Windjammer Cove Apartment lease naming lessors as Teofilo Fernandes and Debra Fernandes (supra at 57) and the ***direct contradictions this causes*** within the 2016 NOID which stated "the apartment at 71 Shaw Street showed the tenants as... Bernadette Santos and two children." Exh K. at 2 and Exh H at 26-29.

81. On January 9, 2020, Plaintiffs Ms. FERNANDES and Mr. FERNANDES FILHO filed civil action in this court pursuant to the Administrative Procedure Act ('APA'), 5 U.S.C. §701 et seq., the federal question statute, 28 U.S.C. §1331, the INA, 8 U.S.C §1101 et seq., and the Constitution of the United States, seeking review of a decision by Defendant USCIS denying Petitioner's 2016 I-130 Petition. Exh. L.

82. On September 16, 2020, upon consent of the parties and without prejudice, parties reached an agreement to allow Ms. FERNANDES to refile USCIS Form I-130 to petition for her father, Mr. FERNANDES FILHO. The same day, a Stipulation of Dismissal was filed Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure and this court terminated proceedings. Exh M; Exh N.

83. Without articulating an explanation, the January 22, 2025 BIA decision referenced their prior 2017 record of proceedings and 2017 Denial (based on the 2016 NOID and 2016 USCIS Denial) and affirmed USCIS's 2020 Denial and dismissed Plaintiffs' 2020 BIA appeal. Exh. E.

## LEGAL BACKGROUND

### a.    Due Process Concerns:

84. The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.. A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing that a cognizable liberty or property interest is at stake. Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Dacosta v. Gonzales, 449 F.3d 45 (1st Cir., 2006).

85. Plaintiff, Ms. FERNANDES asserts that Defendants deprived her of two constitutionally protected interests: liberty and property. Plaintiff, Ms. FERNANDES, as a U.S. Citizen Petitioner, has a constitutionally protected property interest attached to 8 U.S.C. § 1154(b), which extends to the adjudication of her USCIS Form I–130 petition. Ching v. Mayorkas , 725 F.3d 1149 (9th Cir. 2013). Additionally, both Petitioners have a protected family-based liberty interest. "The right to live with and not be separated from one's immediate family is a right that ranks high among the interests of the individual and that cannot be taken away without procedural due process. Id. at 1149, 1157. The Defendants

deprived Petitioners of both interests without due process of law by denying their Form I-130 in an arbitrary, irrational, and unlawful manner.

86. In order to have a property interest in a benefit, a person must have more than an abstract need or desire for it, or a unilateral expectation of it; she must instead have a legitimate claim of entitlement to it. Ching v. Mayorkas, 725 F.3d 1149, 1155 (9th Cir. 2013); Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571–72, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

87. A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms. Id. In other words, discretionary forms of relief are not protected interests. This Circuit has held that "[d]iscretionary forms of relief do 'not rise to the level of such a protected interest,'" Id. (quoting DaCosta, 449 F.3d at 50 ).

88. Because it requires the application of law to factual determinations, the language of INA § 204, codified at 8 U.S.C. § 1154(b), affirms that the decision to approve a citizen petitioner's I-130 application is **non**discretionary. Ching v. Mayorkas, 725 F.3d 1149 (9th Cir. 2013) In Ching, the Ninth Circuit found that the language of the statute itself leaves no room for discretion.

> "'After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to accord a status under section 1153(b)(2) or 1153(b)(3) of this title, the [Secretary of Homeland Security] *shall,* if he determines that the facts stated in the petition are true and that the alien [o]n

behalf of whom the petition is made is an immediate relative specified in section

1151(b) of this title or is eligible for preference under subsection (a) or (b) of

section 1153 of this title, ***approve the petition*** and forward one copy thereof to the

Department of State. The Secretary of State shall then authorize the consular

officer concerned to grant the preference status. '" <u>Caplash v. Johnson</u>, 230

F.Supp.3d 128 (W.D. N.Y., 2017)

89. Therefore, since the grant of an USCIS I-130 petition for immediate relative status is not

a discretionary decision, U.S. Citizen Petitioner, Ms. FERNANDES, reasonably has a

legitimate claim of entitlement to it. Where a petitioner of an immediate relative petition

proves eligibility for the requirement, she is entitled, as a matter of right to the approval

of her petition, as the language of the statute is couched in mandatory terms and is non-

discretionary. <u>Id</u>. The mere existence of an exception to eligibility, such as the bar of

INA §204(c), 8 U.S.C. §1154(c), does not affect the right to the benefit; rather it imposes

conditions to the grant of the right. <u>See</u> <u>Id</u>., 725 F.3d at 1156.

90. "In almost every setting where important decisions turn on questions of fact, due process

requires an opportunity to confront and cross-examine adverse witnesses." <u>Id.</u> <u>citing</u>

<u>Goldberg v. Kelly</u>, 397 U.S. 254, 90 S.Ct. 1011, 1011, 25 L.Ed.2d 287 (1970). If a

violation of such a requirement potentially affects the outcome of proceedings, prejudice

to the plaintiff may be inferred. <u>Id</u>., 725 F.3d at 1157.

91. Once it is established that there is a protected property interest and sufficient prejudice

exists, it must be determined whether additional process was due.  Identification of the

specific dictates of due process generally requires consideration of three distinct factors: first the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional substitute procedural requirements would entail.  Matthews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

92. The first Matthews factor is an assessment of the private interest that will be affected by the official action.  The right to live with and not be separated from one's immediate family is "a right that ranks high among the interests of the individual" and that cannot be taken away without due process, and, hence, the first factor favors plaintiffs in such circumstances.  See, e.g., Ching, 725 F.3d at 1157.

93. The second Matthews factor is the risk of an erroneous deprivation of such interest through the procedures used and the probative value of additional procedural safeguards.  In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses.  Goldberg, 397 U.S. at 269, 90 S.Ct. 1011.

94. The I-130 denial letter, issued by Defendants, disregards clear and convincing evidence submitted by both Petitioners. Key evidence was overlooked, or fell through procedural cracks, erroneously depriving Plaintiffs of property and liberty interests.

95. The third Matthews factor, requires consideration of the government's interest, including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail. <u>Ching</u>, 725 F.3d at 1158. In <u>Ching</u>, <u>id.</u>, the court concluded that "the additional procedures [of an additional hearing to permit cross examination] would entail minimal cost to the government and, regardless, financial cost should not be a controlling factor, in light of the importance of the interests involved. <u>Ching</u>, 725 F.3d at 1158.

96. Any financial cost to the government pales in comparison to the substantial interests at risk to the Plaintiffs. Moreover, the government holds a crucial interest in making sure its own immigrations systems' procedures are constitutionally adequate, lawful, and efficient.

### b. Applicable Statutory and Regulatory Substantive Law

97. INA §204(a)(1)(A)(i), 8 U.S.C. 1154(a)(1)(A)(i) provides that "any citizen of the United States" may seek classification of family members as "immediate relatives" for immigration purposes by filing a petition with the government. The term "immediate relative" includes the children (unmarried and under 21), parents and spouses of the United States citizen. INA §201(b)(2)(A)(i), 8 U.S.C. §1151(b)(2)(A)(i).

98. In turn, INA §204(c), 8 U.S.C. §1154(c) provides that USCIS cannot approve such a petition where the alien has previously sought to be accorded an immediate relative status as the spouse of a citizen of the United States by reason of a marriage determined to have been entered into for the purpose of evading the immigration laws, or the alien attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. An approved petition is a prerequisite for adjustment of status to lawful permanent residence pursuant to INA §245(a), 8 U.S.C. §1255(a).

99. The determination regarding whether the marriage was entered into for the purpose of evading immigration laws "also applies to any prior marriage found to have been entered into for the purpose of evading immigration laws…" Ali v. United States, 2016 DNH 98 (D.N.H., 2016).

100. When making a determination that beneficiary's prior marriage comes within the purview of INA §204(c), 8 U.S.C. § 1154(c) as a marriage entered into for the purpose of evading the immigration laws, the district director should not give conclusive effect to determinations made in prior proceedings, but, rather, should reach an independent conclusion based on the evidence of record, although any relevant evidence may be relied upon, including evidence having its origin in prior USCIS proceedings involving the beneficiary or in court proceedings involving the prior marriage. Matter of Tawfik, 20 I & N. Dec. 166, 166 (BIA 1990).

101. In order for a petition to be barred by INA §204(c), 8 U.S.C. §1154(c), there must be "substantial and probative evidence" of the previous attempt to seek immediate relative status and the derogatory evidence must be contained in the alien's file. 8 CFR §§103.2(b)(16)(i), 204.2(a)(1)(ii); Tawfik, 20 I & N. Dec. at 167 and170.

102. It is initially "the government's burden of establishing substantial and probative evidence that the prior marriage was a sham." Roman v. Riordan, 209 F.Supp.3d 371, 377 (D. Mass. 2016) quoting Matter of Kahy, 19 I. & N. Dec. 803, 806 (BIA 1988). "Substantial evidence 'is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. quoting Astralis Condo. Ass'n v. Sec'y. U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 66 (1st Cir.

2010).  In <u>Tawfik</u>, the Service concluded that the record contained evidence, "which had

not been rebutted, from which it could reasonably be inferred" that the beneficiary

entered into a marriage for the primary purpose of obtaining immigration benefits, 20 I &

N. Dec. at 168, specifically that the couple lived in different cities at the time of the

denial, 20 I. & N. Dec. at 169. The Board expressly stated that "[t]he mere fact that, at the

time of the visa petition denial, the petitioner was living separate from the beneficiary is

not evidence of an attempt or conspiracy on the beneficiary's part to enter into a marriage

for the purpose of evading the immigration laws." 20 I.& N. Dec. at 169. Similarly, the

conclusion that the beneficiary was living with his former wife at the time of the denial, a

conclusion unsupported by documentary evidence was irrelevant.  <u>Id.</u>

103. As note in <u>Simko v. Bd. Of Immigration Appeals</u>, 156 F.Supp.3d 300, 312 (D. Conn.,

2015), "[a]lthough circumstantial evidence is generally entitled to the same weight as

direct evidence, the BIA has establish a different rule for purposes of ascertaining

whether there is "substantial and probative evidence" that the beneficiary of an I-130

Petition has committed marriage fraud."  The court reads the determination in <u>Twafik</u>, 20

I. & N. Dec. at 168, that "a reasonable inference does not rise to the level of substantial

and probative evidence requisite to the preclusion of approval" as an express policy and

requirement for "direct evidence of fraud in a non-citizen's file to warrant application of

the marriage fraud bar." <u>Id</u>.   There must be a rational connection between the facts found

and the determination, which cannot run counter to the evidence before the agency.

<u>Simko</u>, 156 F.Supp.3d at 313.

104. If the government meets its burden, it must issue a NOID to the petitioner and afford the petitioner "an opportunity to rebut the information and present information … before the decision is rendered" by the government. 8 C.F.R. §103.2(b)(8)(iv), (b)(16)(i). At this point, "the burden shifts to the petitioner to rebut [the] USCIS's finding of fraud and establish that a prior marriage was not 'entered into for the purpose of evading immigration laws.'" Id. quoting Zemeka v. Holder, 989 F.Supp.2d 122, 130 (D.D.C. 2013).

105. The agency review of the rebuttal evidence is, however, likewise subject to review to determine whether the agency acted arbitrarily and capriciously when concluding that the response failed to overcome the grounds for denial. Simko, 156 F.Supp.3d at 313. Any lack of rebuttal to specific allegations must be viewed in light of the established circumstances of the marriage (i.e., demonstrated living arrangements, employment circumstances, etc.) and the Petitioner's burden to prove, by a preponderance of the evidence that the marriage was not fraudulent. A petitioner should not be penalized for the fact that affidavits submitted do "not address specific topics" or for failing to submit evidence that "simply does not exist due to the nature and circumstances of the marriage." This is **particularly true where the Petitioner is handicapped by the requirement that she prove a negative**: that the prior marriage was not fraudulent. Simko, 156 F.Supp.3d at 314.

## STANDARD OF REVIEW

106. The Plaintiffs seek judicial review and declaratory relief under 5 USC §701 et seq., the

APA and the federal question jurisdiction statute, 28 U.S.C. §1331, as well as 8 U.S.C.

§1101 et seq., the INA and the Constitution of the United States.

107. The court reviews agency decisions to determine if they are "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706(2)(A).

Review under the arbitrary and capricious standard is highly deferential, and the court

"may not substitute its judgment for that of the agency, even if it disagrees with the

agency's conclusions." River Street Donuts, LLC v. Napolitano, 558 F.3d 111, 114 (1st

Cir. 2009). The agency's final determination is afforded a presumption of validity and

must be upheld if found to be supported by a rational basis. Id.; Town of Winthrop v.

FAA, 535 F.3d 1, 8 (1st Cir. 2008) ("An agency's decision is not arbitrary and capricious

if that decision was based on consideration of the relevant factors and if it did not commit

a clear error of judgment.").[2]

108. The question whether the agency acted arbitrarily and capriciously in such cases has two

parts. First, the court must determine whether it was arbitrary and capricious for the

agency to conclude that there was "substantial and probative evidence that the prior

marriage was entered into for purposes of evading the immigration laws. Second, the

court must assess whether it was arbitrary and capricious for the court to determine that

---

[2] It has been suggested that different courts have applied both the substantial evidence standard (applicable to findings of fact, such as the bona fides of a marriage, supra.) and the arbitrary and capricious standard in the review of agency denials of I-130 Petitions interchangeably, Simko, 156 F.Supp.3d at 307-309. The court, however, determined that the difference between the two standards in such cases is slight, if a meaningful difference exists at all and the distinction is 'largely semantic.' 156 F.Supp.3d at 308, fn. 6.

the evidence subsequently submitted failed to rebut the agency conclusion that the

marriage was not <u>bona</u> <u>fide</u>.  <u>Simko</u>, 156 F.Supp.3d at 311.

109. An agency decision fails to pass the arbitrary and capricious standard if the

administrative record reveals that "the agency relied on improper factors, failed to

consider pertinent aspects of the problem, offered a rationale contradicting the evidence

before it, or reached a conclusion so implausible that it cannot be attributed to a

difference of opinion or the application of agency expertise." <u>Atieh v. Riordan</u>, 727 F.3d

73, 76 (1st Cir. 2013) (hereinafter, "<u>Atieh II</u>") <u>citing</u> <u>Assoc'd Fisheries of ME., Inc. v.</u>

<u>Daley</u>, 127 F.3d 104, 109 (1st Cir. 1997).

110. Judicial review of the agency's decision must proceed on the administrative record.

<u>Atieh II</u>, 727 F.3d at 75.  APA review involves neither discovery nor trial, rather, the focal

point of APA review is the existing administrative record to determine whether the

administrative record sufficiently supports the agency's decision. <u>Id</u>. at 76.  Customary

practice is for the government to certify that the administrative record is complete and for

the parties to file it with the district court. <u>Id</u>. at 77.[3]

111. On review by the district court, an agency's finding regarding the <u>bona</u> <u>fides</u> of a

marriage is normally regarded as a finding of fact.  Thus, such a finding is reviewed

under the substantial evidence standard and the court cannot contravene the agency's

fact-finding unless a reasonable adjudicator would be compelled to reach a contrary

conclusion.   Within this rubric, credibility determinations are findings of fact and will be

---

[3] Plaintiffs have provided, as exhibits, certain documents from the record.  As indicated above, Plaintiffs were not provided with all documents referenced by the agency.  Plaintiffs therefore respectfully request that the government provide a full certified record to aid adjudication of this complaint.

upheld if the agency "articulate[s] specific and cogent reasons" to support its view.  Atieh
v. Riordan, 797 F.3d 135, 138 (1st Cir. 2015); see also Roman, 209 F.Supp. 3d at 377;
Akwasi Agyei v. Holder, 729 F.3d 6, 13 (1st Cir. 2013).  While the agency is not required
to 'dissect in minute detail' every contention advanced, the agency must 'fairly consider'
the points raised by the complainant and articulate its decision 'in terms adequate to
allow a reviewing court to conclude that the agency has thought about the evidence and
the issues and reached a reasoned conclusion.  Raza v. Gonzales, 484 F.3d 125, 128 (1st
Cir. 2007).

112. Where, as in the instant case, the BIA's current decision adopts and affirms USCIS's
denial and also elaborates on some of the bases of the USCIS's prior 2017 decision, the
court reviews both decisions in tandem.  Roman, 209 F.Supp. 3d at 377 citing Akwasi
Agyei, 729 F.3d at 13 and Zemeka, 989 F.Supp.2d at 128.


**FIRST CLAIM FOR RELIEF: DECLARATORY RELIEF AGAINST ALL
DEFENDANTS
(VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)**

113. Plaintiffs re-allege and incorporate by reference each and every allegation contained
within the preceding paragraphs as if set forth fully herein.

114. Plaintiffs challenge the decisions by USCIS and the BIA to deny Plaintiffs' I-130
petition, as arbitrary, capricious, an abuse of discretion, contrary to law, and in excess of
statutory authority. This Court retains original jurisdiction under the APA and 28 U.S.C. §
1331, as well as for declaratory relief under 28 U.S.C. § 2201.

115. Defendant, BIA, and USCIS both relied on broad gaps in evidence that were later clarified with testimony and written documents. Their reliance on assumption and speculation derived from a general home investigation that Plaintiff Mr. FERNANDES FILHO did not live at Windjammer Cove apartments in Braintree, Massachusetts with his ex-wife was disproven for the record with the submission of a written lease containing both of their names. However, this was not taken into consideration during the USCIS Director's Decision or the BIA appeal Decision.

116. Further, the level of credence given to the affidavits—recollections submitted two decades after—was arbitrarily stringent. Instead of relying on the Affiants' statements, regarding their memories of the couple, as proof of a *bona fide* marriage of Plaintiff Mr. FERNANDES FILHO and his ex-wife, the BIA held Affiants to an unreasonable standard of precision to find them not credible. The substance of their statements was arbitrarily ignored for a mere timeline error Affiants were attempting to recall decades later.

117. As a result of Defendant's arbitrary and capricious disregard for key evidence, while at the same time relying on evidence that had been disproven, Defendant's are erroneously depriving Plaintiffs of their Due Process right to property and liberty.

118. Defendants' practices have resulted and will continue to result in irreparable injury. Both U.S. Citizen Plaintiff, MS. FERNANDES and Plaintiff, Mr. FERNANDES FILHO, are harmed by this separation from family. Plaintiff, Mr. FERNANDES FILHO has been denied the right to be lawfully present in the U.S. and faces removal. Plaintiffs do not have an adequate remedy at law to redress the violations alleged herein, and therefore

seeks injunctive relief restraining Defendants from continuing to engage in the arbitrary and capricious practices alleged herein.

119. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § § 2201 and 2202, this Court may declare the rights or legal relations of any party in any case involving an actual controversy.

120. An actual controversy has arisen and now exists between Plaintiff, on one hand, and Defendants, on the other. Plaintiffs contend that Defendants' conduct and practices, as alleged in this Complaint, violate the INA. On information and belief, Defendants contend that the conduct and practices are lawful.

121. Plaintiffs therefore request and are entitled to a judicial determination as to the rights and obligations of the parties with respect to this controversy, and such a judicial determination of these rights and obligations is necessary and appropriate at this time.

### SECOND CLAIM FOR RELIEF: REVIEWAL OF USCIS AND BIA DECISIONS FOR VIOLATION OF PLAINTIFFS' 5TH AMENDMENT RIGHT TO DUE PROCESS

122. Plaintiffs re-allege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

123. This Court has the authority to review both the decisions of USCIS and the BIA *de novo* and review findings of fact, subject to appropriate principles of administrative deference.

124. Since the BIA findings are not supported by reasonable, substantial, and probative evidence on the record considered as a whole, this Court is not required to give deference to the BIA's findings.

125. Plaintiffs presented probative evidence that was either ignored or overlooked by the USCIS and the BIA. Instead, USCIS and the BIA relied on unsupported evidence containing numerous gaps.

126. As a result of Defendants' failure to consider probative evidence and consider such evidence as a whole, Plaintiff, Mr. FERNANDES FERNANDES FILHO faces removal from the United States as a consequence of denial of the relief, as he is no longer authorized to remain in the United States lawfully.  Also, U.S. Citizen Plaintiff, Ms. FERNANDES has been denied her right to Due Process under the Fifth Amendment of the Constitution. Specifically, she has been denied her right to family life.

127. Defendants' practices have resulted and will continue to result in irreparable injury, and further violations of their Due Process rights. Plaintiffs do not have an adequate remedy at law to redress the violations alleged herein, and therefore seek this Court's review of the USCIS and BIA decisions mentioned herein.

128. Pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § § 2201 and 2202, this Court may declare the rights or legal relations of any party in any case involving an actual controversy.

129. An actual controversy has arisen and now exists between Plaintiffs, on one hand, and Defendants, on the other. Plaintiffs contend that Defendants' conduct and practices, as alleged in this Complaint, violate their Constitutional right to Due Process. On information and belief, Defendants contend that the conduct and practices are lawful.

130. Plaintiffs therefore requests and are entitled to a judicial determination as to their rights and obligations with respect to this controversy, and such a judicial determination of these rights and obligations is necessary and appropriate at this time.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Honorable Court:

A.  Declare unlawful and set aside Defendant USCIS's decision to deny the Plaintiff's I-130 Petition;

B.  Compel agency action unlawfully withheld, pursuant to 5 U.S.C. §§706(1) et seq., specifically approval of Plaintiff's I-130 petition;

C.  Alternatively, Remand to USCIS for findings in accordance with this decision under 5 U.S.C. §702;

D.  Grant reasonable attorney's fees and costs of court under the Equal Access to Justice Act ('EAJA');

E.  Grant such other and further relief as the Court deems proper.


Respectfully submitted this 1st day of June 2025.


By:    /s/ Manuel Pires
       Manuel R. Pires, Esq., MA BBO 563067
       Rodrigues Pires PC
       1212 Hancock Street, Suite LL30
       Quincy, MA 02169
       (617) 770-1212

42